JUNIOR JERNIGAN, Petitioner v. STATE OF NORTH CAROLINA, Respondent

No. 7014SC621

(Filed 31 March 1971)

Criminal Law § 145.5; Constitutional Law §§ 5, 9— reactivation of a parolee's original sentence — discretionary power of Paroles Board — concurrent or consecutive sentence

The statute which grants the Board of Paroles the discretionary power to determine whether the remainder of a parolee's original sentence shall be served concurrently or consecutively with a second sentence imposed for a crime committed during the parole, *held* constitutional; there is no merit to a defendant's contention that the statute fails to provide adequate guidelines or that it violates the separation of powers clause of the State Constitution. G.S. 148-60; G.S. 148-62; N.C. Constitution, Art. I, §§ 8, 17, and Art. IV, § 1.

Chief Judge MALLARD concurring.

ON Writ of *Certiorari* to review an order of *Canaday, J.*, entered in a post-conviction proceeding at the 22 June 1970 Criminal Session of DURHAM Superior Court.

Petitioner was convicted of armed robbery at the July 1960 Session of Durham Superior Court and was sentenced to prison for not less than 12 nor more than 15 years. After serving a portion of this sentence, he was released on parole. While on parole he committed another offense, for which he was brought to trial before Judge Leo Carr and a jury at the April 1967

Session of Durham Superior Court. The jury found him guilty of larceny from the person, a felony, and on 6 April 1967 Judge Carr entered judgment sentencing petitioner to prison for a term of ten years. This judgment made no reference to the prior sentence from which petitioner was then on parole. On 7 April 1967 the Board of Paroles revoked petitioner's parole and notified him that the unserved portion of the sentence from which he had been paroled would be served at the expiration of the ten-year sentence imposed on him by Judge Carr.

The present proceeding was commenced in May 1970 when petitioner filed in the Superior Court of Durham County a petition for post-conviction review pursuant to G.S. 15-217 *et seq.* In this, petitioner contended that the two sentences should run concurrently and that the Board of Paroles lacked power to direct that he must serve the unserved portion of his first sentence only at the expiration of the second sentence. The petition came on for hearing before Judge Harry E. Canaday, Judge of Superior Court presiding at the 22 June 1970 Criminal Session of Durham Superior Court, petitioner being present in person and being represented by court-appointed counsel. After hearing arguments of counsel upon the question of law presented, Judge Canaday found that no relief could be granted. To review this finding, petitioner applied to the Court of Appeals for a writ of *certiorari,* which was allowed.

*Attorney General Robert Morgan by Staff Attorney Edward L. Eatman, Jr. for the State.*

*James B. Craven III for petitioner.*

PARKER, Judge.

While petitioner alleged violation of his rights occurred prior to and during the course of his 1967 trial, at the hearing on his petition for post-conviction review he offered no evidence to support these allegations, and his court-appointed attorney informed the court that he was not contending there was any error in the trial. His sole contention in the post-conviction hearing in the superior court and in this Court is that when parole of his 1960 sentence was revoked, he was entitled to serve the remainder of that sentence concurrently with service of his 1967 sentence. He attacks the constitutionality of G.S. 148-62, which reads as follows:

"§ *148-62. Discretionary revocation of parole upon conviction of crime.*—If any parolee, while being at large upon parole, shall commit a new or fresh crime, and shall enter a plea of guilty or be convicted thereof in any court of record, then, in that event, his parole may be revoked according to the discretion of the Board of Paroles and at such time as the Board of Paroles may think proper. If such parolee, while being at large upon parole, shall commit a new or fresh crime and shall have his parole revoked, as provided above, he shall be subject, in the discretion of the Board of Paroles, to serve the remainder of the first or original sentence upon which his parole was granted, after the completion or termination of the sentence for said new or fresh crime. Said remainder of the original sentence shall commence from the termination of his liability upon said sentence for said new or fresh crime. The Board of Paroles, however, may, in its discretion, direct that said remainder of the original sentence shall be served concurrently with said second sentence for said new or fresh crime."

This statute embodies two legislative declarations. The first is a mandate that service of the remainder of the original sentence of one whose parole has been revoked by the parole board after his plea of guilty or conviction of an offense committed while at liberty on parole *"shall commence from the termination of his liability upon said sentence for said new or fresh crime."* The second is the portion of the statute which grants the parole board the power, in its discretion, to direct that the remainder of the original sentence shall be served concurrently with the sentence imposed for the new crime. As to the mandate portion of the statute, no question as to constitutional validity is or can validly be raised. What was said by the Supreme Court of Rhode Island in *State v. Fazzano,* 194 A. 2d 680, is pertinent here:

"In our opinion a legislative body is not inhibited from providing that a sentence for an offense committed while at liberty on parole shall run consecutively with the unexpired portion of an original or prior term. Any such enactment is not in conflict with the inherent judicial power to impose consecutive or concurrent sentences. This is the clear implication of the cases." (Citing cases.)

And, as pointed out in the opinion of the Supreme Court of the United States in *Zerbst v. Kidwell,* 304 U.S. 359, 58 S.Ct. 872, 82 L. Ed. 1399:

> "Parole is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency—under guidance and control of the Board. Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offense committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified."

Since in our opinion the mandate portion of the statute is valid and has not been seriously attacked by petitioner in the argument before us, it is difficult to see what cause petitioner has to question the validity of a grant of discretionary power which, if exercised at all by the parole board, could only be exercised in his favor. We nevertheless will examine petitioner's contentions in that regard.

Petitioner contends G.S. 148-62 is unconstitutional insofar as it grants discretionary power to the Board of Paroles because, so he contends, (1) it assigns judicial power to the Board of Paroles in contravention of Article IV, Section 1, and the separation of powers clause (now contained in Article I, Section 8, but effective 1 July 1971 contained in Article I, Section 6) of the Constitution of North Carolina, and (2) it fails to provide adequate standards to guide the Board of Paroles in exercise of the discretionary power granted to it, thereby depriving petitioner of liberty other than by the law of the land, as prohibited by Article I, Section 17 (effective 1 July 1971, see Article I, Section 19) of the State Constitution. We do not agree with either contention.

In assessing the validity of petitioner's contentions, an examination of the history of the parole power in North Carolina may be helpful. In this State the power to grant and to revoke paroles developed originally as a function of the executive branch of the government. At one time a parole was considered by the Supreme Court of North Carolina to be a form of "conditional pardon," *State v. Yates,* 183 N.C. 753, 111 S.E. 337; *In re Williams,* 149 N.C. 436, 63 S.E. 108, and the power to grant a

Jernigan v. State

parole was considered as included in the Governor's pardoning power. By amendment proposed by Chapter 621 of the 1953 Session Laws, and adopted by vote of the people at the general election held 2 November 1954, Article III, § 6, of our Constitution was amended by adding thereto the following sentences:

> "The terms reprieves, commutations and pardons shall not include paroles. The General Assembly is authorized and empowered to create a Board of Paroles, provide for the appointment of the members thereof, and enact suitable laws defining the duties and authority of such Board to grant, revoke and terminate paroles. The Governor's power of paroles shall continue until July 1, 1955, at which time said power shall cease and shall be vested in such Board of Paroles as may be created by the General Assembly."

These provisions were in effect at all times pertinent to the present case and remain in effect at the present time, the amendments to our Constitution adopted by vote of the people at the general election held 3 November 1970 not becoming effective until 1 July 1971. Since in this State the parole power has never been considered to be a judicial function, it is apparent that the placing of this power in a Board of Paroles could not be considered as depriving the judicial department of any power or jurisdiction that rightfully pertains to it as a coordinate department of the government as prohibited by Article IV, Section 1 of our State Constitution. This would be true even in the absence of the above-quoted express constitutional authorization.

In his brief petitioner does not challenge the "basic authority" of the Board of Paroles to release persons from confinement before expiration of their sentences nor does he challenge the "established principle" that a parolee who is convicted of a new crime committed while at large upon parole should have his parole revoked and be required to complete service of the sentence from which he was paroled. He challenges only the discretionary authority granted the Board of Paroles to control whether service of the first sentence be concurrent or consecutive with service of the second sentence. As applied to this case, he argues that had Judge Carr intended the two sentences to be served consecutively, he could have so specified at the time he imposed the second sentence, and that having failed to do so, it must be presumed that he intended the two sentences

to run concurrently, citing *In re Parker*, 225 N.C. 369, 35 S.E. 2d 169. From this, he argues that the subsequent exercise by the Board of Paroles of its discretionary authority in such manner as to require that service of the first sentence should commence only after service of the second sentence was completed, necessarily resulted in depriving Judge Carr of control over the sentencing process which, so petitioner contends, was the exclusive prerogative of the trial judge.

We do not accept petitioner's argument. To begin with, we find no greater deprivation of the court's control over the sentencing process when the Board of Paroles exercises or refuses to exercise the discretion granted it by G.S. 148-62 than when it releases a prisoner on parole in the first instance, which initial power petitioner concedes. Further, *In re Parker, supra,* relied on by petitioner, holds merely that "[i]n the absence of a statute to the contrary, and unless it sufficiently appears otherwise in the sentence itself, it is *generally presumed* that sentences imposed in the same jurisdiction, to be served at the same place or prison, run concurrently, although imposed at different times, and by different courts and upon a person already serving a sentence." (Italics added.) The general presumption referred to, however, that two or more sentences shall run concurrently unless a statute or the court imposing the later sentences clearly specifies otherwise, gives rise to no ironclad constitutional right that they must in all cases do so, and under the facts presented by the present record the "general presumption" does not even arise. *In re Parker, supra,* involved a sentence imposed upon an escapee for a new crime committed by him while on escape. In such case the prisoner is subject to an active sentence at the time the second sentence is imposed, and the court imposing the second sentence has an option to make the second sentence run either consecutively or concurrently with the first. But where, as in the case now before us, the defendant is still on parole at the time he is convicted and sentenced for a new crime committed by him while on parole, he is not under an active sentence at the time the second sentence is imposed. He has been released in the discretion of the Parole Board and the second sentence cannot be made by the sentencing judge to be consecutive or concurrent to a sentence which is not then in effect. The Board of Paroles may revoke the parole in its discretion, and we find no unconstitutional deprivation of the court's sentencing power in the addi-

Jernigan v. State

tional discretion granted the Board by G.S. 148-62 to determine whether the remainder of the first sentence must be served consecutively or concurrently with service of the second sentence.

Nor are we impressed with petitioner's argument that the Legislature failed to provide constitutionally adequate standards to guide the Board of Paroles in the exercise of the discretionary power granted to it. In a matter which historically, in this State at least, has been considered a function of the executive branch and which by its nature involves evaluation of a large number of intangibles, rigid guide lines are neither necessary nor desirable. The Legislature did specify, in G.S. 148-60, the matters to which the Parole Board should give "due consideration" in exercising its discretion at the time of granting parole. By clear implication the same matters should be considered by the Board when exercising its discretionary power under G.S. 148-62 to revoke a parole and to determine when service of the remainder of the sentence upon which parole was granted shall commence.

In our opinion G.S. 148-62 does not contravene the Constitution of North Carolina.

In the order refusing petitioner relief we find

No error.

Judge GRAHAM concurs.

Chief Judge MALLARD concurring.

I concur in the result. While I would agree that G.S. 148-62 is constitutional, in my opinion, petitioner has failed to present that question on the record before us. As far as the record discloses, no evidence was presented at the hearing before Judge Canaday on the petition for post-conviction review, no findings of fact were made, and the record does not clearly disclose on what basis Judge Canaday ruled that no relief could be granted. The ruling can be supported without passing on the constitutionality of G.S. 148-62, and I would dismiss the petition for *certiorari* as having been improvidently granted.